1
2
3
4
5
6
7                    **UNITED STATES DISTRICT COURT**
8                      **EASTERN DISTRICT OF CALIFORNIA**
9
10

| LARRY ZAMORA, | ) Case No.: 1:18-cv-01066-BAM |
|---|---|
| Plaintiff, | ) |
| v. | ) **ORDER REGARDING PLAINTIFF'S** |
|  | ) **SOCIAL SECURITY COMPLAINT** |
| ANDREW M. SAUL,[1] Commissioner of Social Security, | ) |
| Defendant. | ) |

## INTRODUCTION

Plaintiff Larry Zamora ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act and supplemental security income under Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.[2]

---

[1] Andrew M. Saul is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul is substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit.
[2] The parties consented to have a United States Magistrate Judge conduct all proceedings in this case, including entry of final judgment, pursuant to 28 U.S.C. § 636(c). (Doc. Nos. 7, 8.)

1

Having considered the briefing and record in this matter, the Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards. Accordingly, this Court affirms the agency's determination to deny benefits.

**FACTS AND PRIOR PROCEEDINGS**

Plaintiff filed an application for disability insurance benefits on July 15, 2014, and an application for supplemental security income on February 18, 2015. AR 200-01, 204-10.[3] Plaintiff alleged that he became disabled on March 21, 2012, due to a traumatic brain injury, a back injury, neurogenic bladder (incontinence), nerve damage, chronic pain, anxiety/depression, peripheral damage, and loss of feeling in his leg. AR 242. Plaintiff's applications were denied initially and on reconsideration. AR 128-32, 134-39, 140-45. Subsequently, Plaintiff requested a hearing before an ALJ. ALJ Shiva Bozarth held a hearing on February 28, 2017, and issued an order denying benefits on August 24, 2017. AR 11-27, 38-68. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 1-5. This appeal followed.

**Hearing Testimony**

The ALJ held a hearing on February 28, 2017, in Fresno California. Plaintiff appeared with his attorney, Robert Ishikawa.

In response to questions from the ALJ, Plaintiff testified that he has a GED and lives with his wife. He also has a teenage son, but only has visitation every other week. His son plays sports, but he is not able to go to all of the games. AR 54-55.

When asked about his work history, Plaintiff testified that he worked for about a year primarily as a forklift operator at P-R Farms, but also doing some daily maintenance work. When driving the forklift, he would have to pull bins weighing a couple hundred pounds and load them onto trucks. With regard to his maintenance work, Plaintiff was injured while reattaching plywood to the wall. Other maintenance work included fixing the bins, chopping firewood and tuning up trucks. AR 45-49.

---

[3] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

2

Plaintiff further testified that in 2007 and 2008, he worked for Field Financial as a maintenance/handyman for rental properties. In 2004, he worked for Wayne Farms in the fields, picking tomatoes, pruning, driving tractors and cleaning up rows. In 2003, he worked for Central Valley Concrete as a yard man, loading trucks, loading rocks, and making cement. AR 49-53.

When asked about his abilities, Plaintiff testified that he could sit about ten minutes. He has difficulty concentrating because of ringing in his ears. He sometimes cooks and helps with the housecleaning, picking up after himself. He can vacuum. He and his wife both do the grocery shopping. When he takes walks, he has to use a cane. AR 55-58.

When asked about his doctors, Plaintiff reported that he is seeing Dr. Edwards and also sees worker's compensation doctors. He has not reached a settlement on his worker's compensation claim. AR 58.

In response to questions from his attorney, Plaintiff testified that he has problems with incontinence and has accidents. With his brain injury, he is forgetful  He has mood swings and is on Paxil. He also gets irritable and does not understand a lot of things. Every day he has dizziness and headaches because of his vision. He lies down more than 50 percent of the day because of fatigue and pain. Activities like going to church exhaust him. He is in constant pain and he takes Oxycontin, Norco and Neurontin. The medications cause drowsiness. AR 59-62.

When asked about his activities, Plaintiff testified that he goes to church on Sundays, Tuesdays and Wednesdays. He also visits with his friends, family, kids and grandkids, but can only be around them so long before he starts getting tired or moody. AR 62-63.

When asked about his sight, Plaintiff testified that he has difficulty reading because his eyes hurt, and he starts to get headaches. After reading for about five minutes, his vision gets blurred. He is waiting for glasses to be approved by worker's compensation. He also has problems with the peripheral vision in his right eye. AR 63-64.

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

///

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act. AR 11-27. Specifically, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since March 21, 2012, his alleged onset date. AR 16. The ALJ identified thoracic spine injury, traumatic brain injury, nerve damage medial aspect, left thigh, and a depressive disorder as severe impairments. AR 16. The ALJ determined that the severity of Plaintiff's impairments did not meet or equal any of the listed impairments. AR 16-18. Based on a review of the entire record, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to lift or carry 40 pounds occasionally and 20 pounds frequently, sit at least 6 hours in an 8-hour workday, and stand or walk for at least 2 hours in an 8-hour workday. However, Plaintiff needed to use a cane in his dominant hand to stand or walk for more than 30 minutes or across uneven terrain. Plaintiff could occasionally climb ramps, stairs, ladders, scaffolds, and ropes, could occasionally balance, stoop, kneel and crouch, but could never crawl or be exposed to unprotected heights or fast-moving machinery. He also could not work at a production line work pace and could only perform SVP 1 or SVP 2 level work. AR 18-25. With this RFC, the ALJ found that Plaintiff could not perform his past relevant work, but could perform other jobs in the national economy, such as order clerk (food and beverage), addresser and document preparer.[4] AR 25-27. The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. AR 27.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as

---

[4] The ALJ submitted hypothetical questions via interrogatories to the VE to reach a step-five finding. AR 26, 27.

adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

## DISCUSSION[5]

Plaintiff contends that the ALJ erred by (1) failing to provide specific and legitimate reasons to discount the opinion of Dr. Steven Feinberg, a worker's compensation examining physician; (2) failing to provide specific and legitimate reasons to discount the opinion of Dr. John Edwards, his treating physician; and (3) failing to consider the opinion of Dr. Alexander Sparkunhl, a worker's compensation qualified medical examiner.

///

---

[5] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

**A.  The ALJ Provided Specific and Legitimate Reasons to Discount the Opinion of Dr. Steven Feinberg**

Plaintiff first argues that the ALJ erred in his evaluation of the opinion of Dr. Steven Feinberg, a worker's compensation agreed medical examiner.

On February 25, 2014, Dr. Feinberg conducted an evaluation of Plaintiff's physical condition resulting from a work injury on March 21, 2012, during which Plaintiff fell approximately 25 feet in a forklift cage. On examination, Plaintiff had a slow and antalgic gait, moved slowly, and had poor balance. He had no gross muscular atrophy. His lumbar motion was decreased, but all other ranges of motion were normal. He had diffuse groin area numbness to touch. Plaintiff's straight leg raising was negative and his reflexes were normal, except they were absent at the left knee and right ankle. AR 1603-04. Dr. Feinberg assessed Plaintiff as status-post 3/21/2012 work-related injury with mild lower thoracic compression fractures, a healed left lower rib fracture and postconcussion syndrome. Plaintiff also had unexplained left upper extremity weakness, unexplained lower reflex asymmetry, exogenous obesity, psychiatric comorbidity and chronic pain syndrome. AR 1604.

Following examination, Dr. Feinberg opined that it was "frankly difficult to ascertain in this one visit today how much of [Plaintiff's] presentation is related to a brain injury and/or how much is related to behavioral issues secondary to psychiatric comorbidity." AR 1606. Dr. Feinberg believed that absent further evaluation, Plaintiff was "100% disabled from his brain injury and not competitive in the open labor market." *Id.* However, Dr. Feinberg admitted that he did not "have adequate information or a complete medical file," and that Plaintiff needed "a full assessment including a high quality neuropsychological evaluation and probably a separate psychiatric evaluation as well." *Id.* at 1606-07.

Dr. Feinberg further opined as follows:

> I received the AME report of neurologist Dr. Newton after I examined Mr. Zamora. While acknowledging [ ] a posttraumatic head injury, Dr. Newton noted, as did I, that Mr. Zamora's presentation was clouded by somatoform type features. He basically presents with considerable symptom elaboration and what can be described as a chronic pain syndrome. Dr. Newton did provide a permanent and stationary status report but also noted that there were missing records and the need for further medical legal evaluations. [¶] I could not agree more with Dr. Newton about the complexity of Mr. Zamora's presentation.

> It is extremely difficult to sort out what is organic and what is psychiatric and/or brain injury related . . . .
>
> …
>
> Quite frankly while Mr. Zamora's condition may well be stabilized (and assuming he is presenting himself legitimately – I have no reason to think otherwise), he presents himself as so highly dysfunctional that unless some type of rehabilitation effort can be successful, he has no meaningful chance of returning to the open labor market or [being] gainfully employed at the present.

*Id.* at 1607-08.

Plaintiff asserts that the ALJ did not articulate specific and legitimate reasons for rejecting Dr. Feinberg's opinion. The Court disagrees.

Cases in this circuit identify three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). As a general rule, more weight should be given to the opinion of a treating source than to the opinions of doctors who do not treat the claimant. *Id.* Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Id.* If the treating physician's opinion is contradicted by another doctor, the Commissioner must provide "specific and legitimate" reasons supported by substantial evidence in the record to reject this opinion. *Id.*

As with a treating physician, the Commissioner also must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Lester*, 81 F.3d at 830. If contradicted, the opinion of an examining physician can only be rejected for "specific and legitimate reasons" that are supported by substantial evidence in the record. *Id.* at 830-31. The opinion of a nonexamining physician alone is not substantial evidence that justifies the rejection of the opinion of either a treating or examining physician. *Id.* at 831.

Here, the ALJ assigned "little weight" to Dr. Feinberg's opinion, reasoning as follows:

> Dr. Feinberg opined that the claimant was 100% disabled from his brain injury and not competitive in the open labor market. However, he admitted that he did not have adequate information or a complete medical file, and that the claimant required further assessment in the form of a neuropsychologic evaluation and probably a separate psychiatric

7

evaluation (Exhibit 4F, pp. 556-570). I give little weight to this opinion. It is inconsistent with the medical evidence of record as a whole and other opinion evidence. The medical evidence of record shows that the claimant's traumatic brain injury was mild and he has little residual cognitive impairment. In addition, Dr. Feinberg admits he did not have adequate information to evaluate the claimant, and that the claimant required further evaluations by other specialists. Thus, his opinion is unreliable.

AR 22.

In this instance, the Court finds that the ALJ properly discounted Dr. Feinberg's opinion. The ALJ first assigned little weight to Dr. Feinberg's opinion that Plaintiff was disabled from his brain injury because that opinion was inconsistent with the medical record demonstrating Plaintiff's injury was mild and that he had little residual cognitive impairment.[6] An ALJ may discount an examining doctor's opinion when it is inconsistent with or unsupported by the medical evidence. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (finding that an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole or by objective medical findings); *see also Tommasetti v. Astrue*, 533 F.3d a1035, 1041 (9th Cir. 2008) (finding ALJ provided specific and legitimate reason for rejecting physician opinion unaccompanied by independent analysis or diagnosis). The medical record, as summarized by the ALJ, includes objective evidence demonstrating that Plaintiff sustained a mild concussion with mild cognitive deficits when he fell off of scaffolding on March 21, 2012. AR 19, 1054, 1072. During rehabilitation from his fall between March 25, 2012 to April 10, 2012, Plaintiff was noted to have mild cognitive-linguistic deficits and mild memory and auditory comprehension deficits with abstract and complex/lengthy information. AR 20, 1007, 1009. These mild findings are not consistent with Dr. Feinberg's opinion of complete disability due to a traumatic brain injury.[7]

---

[6] The Court notes that Dr. Feinberg did not assign Plaintiff any functional limitations and instead opined that Plaintiff was 100% disabled and unable to be gainfully employed. An examining physician's opinion on the ultimate issue of disability is not conclusive because that is an issue reserved to the Commissioner. *See Rodriguez v. Bowen*, 876 F.2d 759, 762 (9th Cir. 1989) (finding physician's opinion on the ultimate issue of disability not conclusive).

[7] Plaintiff appears to suggest that the ALJ could not discount Dr. Feinberg's opinion based on the characterization of Plaintiff's brain injury as mild because Dr. Feinberg was "recruited to assess [Plaintiff's] spine and left hip." (Doc. 20 at 9.) However, Dr. Feinberg opined that Plaintiff was 100% disabled due to his brain injury and identified no functional limitations relative to Plaintiff's spine or hip. AR 1606. The ALJ therefore appropriately considered the medical evidence concerning Plaintiff's brain injury in discounting Dr. Feinberg's opinion.

Plaintiff asserts that the medical evidence does not support mild cognitive deficits based on the opinion of Dr. Fedrick H. Newton, a worker's compensation agreed medical examiner. (Doc. No. 20 at 7-8.) Plaintiff's assertion is not persuasive. Dr. Newton diagnosed Plaintiff with, among other physical impairments, a closed head injury with post traumatic headaches and neuropsychiatric symptom complex, which refers to a compendium of difficulties in the social, cognitive, behavioral and emotional realms. AR 1552. Following an examination and review of records, Dr. Newton opined only that Plaintiff needed to avoid tasks that required prolonged weightbearing and heavy lifting, and he would require a semi-sedentary type situation. Dr. Newton did not assess work limitations relative to Plaintiff's head injury. AR 1555. Moreover, Dr. Newton found that "[p]recise delineation of the components of the head injury is rendered difficult by the patient's markedly liberal tendency for endorsing the symptomatic state." AR 1552. Dr. Newton indicated that Plaintiff "offer[ed] up complaint about virtually everything that he is asked, many of the responses having a non-specific, tenuous and vague quality." *Id.* Dr. Newton also pointed out that the Plaintiff's closed head injury was "relatively minor" by all accounts. *Id.* The Court therefore finds that Dr. Newton's opinion does not undercut the ALJ's determination that Plaintiff's residual cognitive impairments were mild. Moreover, the Court notes that while the ALJ assigned Dr. Newton's opinion limited weight, she also found it consistent with Plaintiff's RFC limitation to sedentary work and the inability to perform heavy lifting. AR 21. Plaintiff has not challenged the ALJ's assessment of Dr. Newton's opinion.

The ALJ next discounted Dr. Feinberg's opinion because it was inconsistent with other opinion evidence. AR 22. When assigning weight to a medical opinion, the ALJ may properly consider whether that opinion is consistent with the record as a whole. *See* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.") Plaintiff contends that this is not a specific and legitimate reason because the physical examination by consultative examiner, Dr. Kakshmanaraju Raju, yielded the same results as Dr. Feinberg. (Doc. 20 at 8.) Plaintiff's contention is not persuasive. On physical examination, Dr. Feinberg found that Plaintiff had reduced lumbar range of motion, his reflexes were absent at the left knee and right ankle, and he had diffuse groin area numbness to touch. AR 1604. In

contrast, Dr. Raju found that Plaintiff's lumbar range of motion was within normal limits, his reflexes were normal and symmetric bilaterally, and his sensation was grossly intact and clinically unremarkable. AR 1653. On this record, the Court cannot conclude that the physical examinations by Drs. Feinberg and Dr. Raju yielded the same results.

The ALJ next found Dr. Feinberg's opinion unreliable because Dr. Feinberg admitted that he did not have adequate information and that Plaintiff required further evaluations by other specialists. AR 22. The extent to which a medical source is familiar with the other information in a claimant's treatment record is a relevant factor that may be considered in deciding the weight to give to a medical opinion. 20 C.F.R. § 404.1527(c)(6); 20 C.F.R. § 416.927(c)(6). Further, the better an explanation a source provides for a medical opinion, the more weight will be given to that medical opinion. *See* 20 C.F.R. § 404.1527(c)(3); 20 C.F.R. § 416.927(c)(6); *cf. Batson*, 359 F.3d at 1195 (ALJ may discredit physicians' opinions that are unsupported by the record as a whole). In his opinion, Dr. Feinberg admitted that it was difficult to ascertain "how much of [Plaintiff's] presentation is related to a brain injury and/or how much is related to behavioral issues secondary to psychiatric comorbidity." AR 1606. Given Dr. Feinberg's admitted difficulties, it was not unreasonable for the ALJ to conclude that Dr. Feinberg's opinion of total disability was unreliable. The ALJ appropriately concluded that Dr. Feinberg's opinion was entitled to less weight because he did not have a complete record and he believed additional evaluations were necessary.

### B. The ALJ Provided Specific and Legitimate Reasons to Discount the Opinion of Plaintiff's Treating Physician, Dr. John Edwards

Plaintiff next argues that the ALJ failed to provide specific and legitimate reasons to discount the opinion of his treating physician, Dr. John Edwards. (Doc. No. 20 at 10-14.)

As a general rule, more weight should be given to the opinion of a treating source than to the opinions of doctors who do not treat the claimant. *Lester*, 81 F.3d at 830. As previously explained, where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Id.* If the treating physician's opinion is contradicted by another doctor, the ALJ must provide "specific and legitimate" reasons supported by substantial evidence in the record to reject this opinion. *Id.* "The medical opinion of a claimant's treating physician is given

'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)).

On February 9, 2017, Dr. Edwards completed a Physical Residual Function Capacity Medical Source Statement. Dr. Edwards indicated that Plaintiff's diagnosis included back pain and a T11 fracture with significant clinical findings of decreased spine range of motion and decreased left leg sensation. Dr. Edwards opined that Plaintiff could occasionally lift 10 or 15 pounds. He could walk a city block or more without rest or severe pain but had problems with balance when ambulating and problems with stooping, crouching and bending. He did not require the use of a cane or assistive devices and he had the ability to climb stairs. Dr. Edwards did not know how long Plaintiff needed to lie down or recline during an 8-hour day but opined that Plaintiff could sit about 2 hours in an 8-hour workday and stand/walk about 90 minutes in an 8-hour workday. Dr. Edwards believed that Plaintiff would need to take 2 unscheduled breaks each workday. His pain and stress were severe enough to interfere occasionally with attention and concentration during a typical workday. Dr. Edwards estimated that Plaintiff would be absent from work 2 days per month due to his impairments. He also believed that Plaintiff was unable to obtain and retain work in a competitive work environment 8 hours per day, 5 days per week. AR 1800-1803.

In considering Dr. Edwards' opinion, the ALJ reasoned as follows:

> I give little weight to the opinion of Dr. Edwards as it is overly restrictive, particularly the limitations regarding sitting and absenteeism. Dr. Edwards' Medical Source Statement is not consistent with the medical evidence of record and opinion evidence as a whole, and it is not consistent with his treatment records, discussed above, which show improvement of the claimant's back and leg symptoms with medications.

AR 23.

As stated, Plaintiff asserts that the ALJ erred in his evaluation of Dr. Edwards' opinion. The Court disagrees and finds that the ALJ provided specific and legitimate reasons for discounting Dr. Edwards' opinion.

First, the ALJ discounted Dr. Edwards' limitations because they were "overly restrictive," particularly the limitations regarding sitting and absenteeism. AR 23. An ALJ may properly reject a

11

medical opinion that is inadequately supported by medical findings. *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is ... inadequately supported by clinical findings."); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir.1992) (holding that an ALJ may discount the conclusory opinion of an examining or treating physician if the opinion is unsupported by clinical findings). In this case, the ALJ summarized Dr. Edwards' treatment notes, which did not identify any functional limitations or clinical findings with respect to Plaintiff's ability to sit (nor did they relate to potential absenteeism). AR 23-24. Although Plaintiff faults the ALJ for conclusory reasoning, Plaintiff does not identify clinical findings to support Dr. Edwards' assessment that Plaintiff can sit for only 2 hours in an 8-hour workday or would be absent 2 times per month. (Doc. No. 20 at 12.) Furthermore, it was appropriate for the ALJ to reject what essentially amounted to a "check-off" report that did not contain any explanation or basis for Dr. Edwards' opinion. *See Molina v. Astrue*, 674 F.3d 1104, 1111-12 (9th Cir. 2012) (holding that an ALJ may reject "check-off reports that [do] not contain any explanation of the bases of their conclusions"), quoting *Crane v. Shalala*, 76 F.3d 251, 253 (9 t h Cir. 1996).

The ALJ also discounted Dr. Edwards' opinion because it was not consistent with the record as a whole or with other opinion evidence. An ALJ may properly reject a treating physician's opinion that is inconsistent with the overall record. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602-03 (9th Cir. 1999). According to objective evidence in the record, and as documented by the ALJ, an MRI in May 2013 showed only "mild" chronic anterior wedging of the T11 and T12 vertebral bodies, with 15% to 10% loss in the height of the vertebral bodies, and no fracture line, no disc herniation, spinal canal stenosis, neural foraminal narrowing, lateral recess stenosis or nerve root impingement at any of the imaged levels in the lower thoracic spine or lumbar spine. AR 21, 1483. Similarly, an MRI completed in February 2014 showed only trace prevertebral edema at C4-5, while CT scans showed no thoracic or lumbar spine injury, and only multilevel minor degenerative changes of the entire spine with no significant abnormalities. AR 22, 530, 853. The ALJ also documented that EMG nerve conduction studies of the lower extremities in May 2012 and January 2013 were normal. AR 21, 1207, 1210, 1427, 1429. These diagnostic findings are not consistent with Dr. Feinberg's opinion regarding Plaintiff's functional limitations.

Additionally, opinion evidence from Dr. Raju in December 2014, discussed above and relied upon by the ALJ, showed that Plaintiff's lumbar range of motion was within normal limits, his reflexes were normal and symmetric bilaterally, and his sensation was grossly intact and clinically unremarkable. AR 22, 1653. Dr. Raju also determined that Plaintiff could sit six hours in an eight-hour workday. AR 1654. Further, opinion evidence from Dr. Newton, also discussed above, indicated in worker's compensation parlance that Plaintiff would need a semi-sedentary type situation. AR 21, 1555. Semi-sedentary, in the worker's compensation context, means "that an individual can 'do work approximately 50% of the time in a sitting position, and approximately 50% of the time in a standing or walking position, with a minimum of demands for physical effort whether standing, walking or sitting.'" *Robert B. v. Berryhill*, No. ED CV 17-01946-DFM, 2019 WL 1100147, at *2 n 5 (C.D. Cal. Mar. 8, 2019) (quoting *Ramos v. Colvin*, No. 14-00775, 2015 WL 419973, at *8 (C. D. Cal. Jan. 30, 2015)). These opinions are not consistent with Dr. Feinberg's assessment of functional limitations, such as an inability to sit for more than 2 hours in an 8-hour workday.

Moreover, the ALJ relied on Dr. Edwards' own treatment records documenting improvement of Plaintiff's back and leg symptoms with medications. "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir.2006)). An ALJ may reasonably assign little weight to a treating physician's opinion that is not representative of a claimant's long-term functioning due to subsequent improvement in his or her condition. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008). Indeed, an ALJ may reasonably cite a claimant's effective treatment as a reason to discount the extreme limitations posited by a treating source. *See Senko v. Astrue*, 279 Fed.App'x. 509, 511 (9th Cir. May 22, 2008) (unpublished) (finding ALJ properly rejected treating doctor's opinion where opinion was not supported by doctor's treatment notes, which showed claimant was "doing well on her medications"); *Gentry v. Berryhill*, No. 1:17-cv-01250-BAM, 2019 WL 1377033, at *8 (E.D. Cal. Mar. 27, 2019) (discussing that ALJ may properly assign little weight to treating physician's opinion that was inconsistent with the general effectiveness of the claimant's treatment). Here, as found by the ALJ, Dr. Edwards' treatment notes reflect that in early 2013, Plaintiff was doing "overall better" with

13

decreased pain. AR 23, 1349. By the middle of 2013, Plaintiff's pain remained reduced at 3/10 on medications and his pain control was "good." AR 23, 1487. By late 2013, Plaintiff's pain remained stable at 3/10 with medications, his activity level had increased, and he was walking more. AR 23, 1522, 1534. In 2014, Plaintiff's pain level remained stable at 3/10 with medications. He was able to perform his activities of daily living. He also had decreased symptoms from his head concussion, Neurontin was working for his left leg burning, and his Paxil was working well for depression and anxiety. AR 23-24, 1536, 1619, 1637, 1702, 1708, 1710, 1713. By 2015, Plaintiff was stable on his medications, his Oxycontin had been tapered over the last year and his neurogenic pain was controlled with Neurontin. AR 24, 1700. In 2016, Plaintiff's pain levels remained stable at 3/10 with medications. AR 24, 1804, 1806, 1809, 1810. Based on these treatment records, the ALJ reasonably found that Plaintiff's impairments improved with mediations.

For these reasons, the Court finds that the ALJ did not err in his evaluation of Dr. Edwards' opinion.

### C. The ALJ Did Not Commit Reversible Error with Respect to the Opinion of Dr. Alexander Sparkuhl

As a final matter, Plaintiff contends that the ALJ failed to consider and weigh the opinion of Dr. Alexander Sparkuhl, a worker's compensation examining physician. (Doc. No. 20 at 14.)

On March 27, 2015, Dr. Sparkuhl completed a worker's compensation evaluation of Plaintiff for complaints of injury to his bladder and erectile disfunction. AR 1718-46. Based on a review of records and testing, Dr. Sparkuhl indicated that Plaintiff had traumatic brain injury, T11, T12 compression fracture, chronic lumbar back pain, sacral hypesthesia, erectile dysfunction, neurogenic bladder, depression/anxiety, vertigo and hypertension. AR 1740-41. Dr. Sparkuhl found that Plaintiff's workplace injury on March 21, 2012, resulted in a traumatic injury to not only T11-T12, but also S2-4, indicating that such injury to the S2-4 spinal levels explained the numbness in Plaintiff's penis, scrotum, left buttock and thigh. AR 1743. Dr. Sparkuhl opined that Plaintiff had reached maximal medical improvement regarding his bladder and erectile disfunction and that Plaintiff was unable to return to the open labor market. AR 1745.

Plaintiff correctly notes that the ALJ failed to discuss the opinion rendered by Dr. Sparkuhl. However, "[a]n ALJ is not required to discuss every piece of evidence submitted" and the "failure to cite specific evidence does not indicate that such evidence was not considered[.]" *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir.1998) (internal citation omitted). More importantly, an ALJ is not required to discuss evidence that is neither "probative" nor "significant." *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (citing *Black*, 143 F.3d at 386). Here, Dr. Sparkuhl's opinion that Plaintiff had reached maximum medical improvement and was unable to return to the open labor market was of little value to the ALJ's determination of disability because Dr. Sparkuhl did not identify any functional limitations that could be translated from the worker's compensation context. Dr. Sparkuhl's finding that Plaintiff was unable to return to the open labor market is an issue reserved for the Commissioner and not a physician. *See Mcleod v. Astrue*, 640 F.3d 881, 884–85 (9th Cir. 2011) (finding ALJ properly rejected doctor's opinion on whether claimant "could work at any job" as such determination was for Social Security Administration to make, and not for a physician).

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Andrew M. Saul, Commissioner of Social Security, and against Plaintiff Larry Zamora.

IT IS SO ORDERED.

Dated: **March 2, 2020**        /s/ *Barbara A. McAuliffe*
UNITED STATES MAGISTRATE JUDGE